No. 24-30139

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MELISSA ROSE BARRETT,

Defendant-Appellant

ON APPEAL FROM THE JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA
(No. 22-CR-71) (Hon. Brian A. Jackson)

BRIEF FOR THE APPELLEE

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

S. ROBERT LYONS
  *Chief, Criminal Appeals &*
  *Tax Enforcement Policy Section*
KATIE BAGLEY
JOSEPH B. SYVERSON
GREGORY S. KNAPP
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 972*
  *Washington, D.C. 20044*
  *(202) 307-3350*

*Of Counsel:*
RONALD C. GATHE, JR.
  *United States Attorney*

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the United States do not believe that oral argument is necessary.  The briefs and record adequately present the facts and legal arguments, such that oral argument would not significantly aid the decisional process.  *See* Fed. R. App. P. 34(a)(2)(C).

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................................... i

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ............................................................ 2

STATEMENT OF THE CASE ............................................................... 2

    I.  Facts ................................................................................... 2

    II.  Procedural History ............................................................... 6

SUMMARY OF THE ARGUMENT .................................................... 10

ARGUMENT ................................................................................. 12

    I.  The Jury Was Properly Instructed that Tax Evasion Can Be
       Committed Without Making Any Misrepresentation and
       Does not Require Fraud or Deceit ........................................... 12

        A.   *Standard of Review* ................................................. 12

        B.   *The Challenged Instruction Was Legally Correct and*
            *Factually Relevant* ................................................. 13

        C.   *Any Error Was Harmless* ........................................ 17

II. The Evidence Was Sufficient ...............................................................20

    A.    *Standard of Review* .................................................................20

    B.    *Defendant Willfully Committed Several Acts of Evasion* ........20

    C.    *Defendant's Tax Evasion Did Not Stop When the IRS Discovered Stat Care* ....................................................................24

III. The District Court Did Not Plainly Err by Failing to Give a Separate Good-Faith Instruction .....................................................28

    A.    *Standard of Review* .................................................................28

    B.    *A Separate Good-Faith Instruction Was Not Necessary* .........28

CONCLUSION ..........................................................................................32

CERTIFICATE OF SERVICE ...................................................................33

CERTIFICATE OF COMPLIANCE .........................................................34

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carter v. United States*,
  530 U.S. 255 (2000)...................................................................9, 30

*Cheek v. United States*,
  498 U.S. 192 (1991).....................................................17, 28, 29, 30

*FDIC v. Abraham*,
  137 F.3d 264 (5th Cir. 1998) ...............................................................30

*Kawashima v. Holder*,
  565 U.S. 478 (2012)...............................................................10, 13

*Musacchio v. United States*,
  577 U.S. 237 (2016)......................................................................27

*Nowell v. Universal Electric Co.*,
  792 F.2d 1310 (5th Cir. 1986) ...........................................................19

*Sandstrom v. Montana*,
  442 U.S. 510 (1979)......................................................................16

*Schmuck v. United States*,
  489 U.S. 705 (1989)........................................................................9

*Spies v. United States*,
  317 U.S. 492 (1943)....................................................14, 15, 21, 27

*United States v. Bolton*,
  908 F.3d 75 (5th Cir. 2018) ...............................................20, 22, 23

*United States v. Carter*,
  638 F. App'x 268 (5th Cir. 2015) ........................................29, 30, 31

*United States v. Cessa*,
  785 F.3d 165 (5th Cir. 2015)...............................................................17

- iv -

*United States v. Doyle*,
956 F.2d 73 (5th Cir. 1992) ...................................................................9

*United States v. Grant*,
850 F.3d 209 (5th Cir. 2017) ...........................................................17, 18

*United States v. Huebner*,
48 F.3d 376 (9th Cir. 1994) ................................................................26

*United States v. Mal*,
942 F.2d 682 (9th Cir. 1991) ..............................................................16

*United States v. Mazkouri*,
945 F.3d 293 (5th Cir. 2019) ..............................................................12

*United States v. McGill*,
964 F.2d 222 (3d Cir. 1992) ...............................................................15

*United States v. Miller*,
588 F.3d 897 (5th Cir. 2009) ..............................................................19

*United States v. Montgomery*,
747 F.3d 303 (5th Cir. 2014) ........................................................29, 30

*United States v. Ng Lap Seng*,
934 F.3d 110 (2d Cir. 2019) ...............................................................19

*United States v. Norris*,
205 F.2d 828 (2d Cir. 1953) ...............................................................26

*United States v. Scharton*,
285 U.S. 518 (1932) .........................................................................14

*United States v. Sertich*,
879 F.3d 558 (5th Cir. 2018) ...............................................14, 20, 22

*United States v. Simkanin*,
420 F.3d 397 (5th Cir. 2005) ........................................29, 30, 31

*United States v. Skilling*,
638 F.3d 480 (5th Cir. 2011) ..............................................................18

- v -

*United States v. Stockman*,
   947 F.3d 253 (5th Cir. 2020).........................................................28, 29

*United States v. Townsend*,
   31 F.3d 262 (5th Cir. 1994)...............................................................9

*United States v. Yurek*,
   925 F.3d 423 (10th Cir. 2019)..........................................................21

## Statutes & Rules

18 U.S.C. § 3231.....................................................................................1

26 U.S.C. § 7201...........................................................................*passim*

26 U.S.C. § 7203.................................................................................8, 9

28 U.S.C. § 1291.....................................................................................1

Fed. R. App. P. 4(b)(1) ........................................................................1

Fed. R. App. P. 32...............................................................................34

## Other Authorities

U.S. Dep't of Justice, Tax Division, *Criminal Tax Manual* § 8.11.......................9

No. 24-30139

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MELISSA ROSE BARRETT,

Defendant-Appellant

ON APPEAL FROM THE JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA
(No. 22-CR-71) (Hon. Brian A. Jackson)

BRIEF FOR THE APPELLEE

STATEMENT OF JURISDICTION

The district court had jurisdiction over this criminal prosecution under 18 U.S.C. § 3231.  On February 29, 2024, the district court sentenced defendant to 52 months of imprisonment, and on March 1, 2024, the district court entered judgment.  ROA.17-18.  Defendant timely filed a notice of appeal on March 6, 2024.  ROA.18.  *See* Fed. R. App. P. 4(b)(1).

This Court has jurisdiction over defendant's appeal of her conviction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.     Whether the district court properly instructed the jury that the crime of tax evasion, 26 U.S.C. § 7201, "does not necessarily involve fraud or deceit."  (Defendant's Issue II.)

II.     Whether the evidence was sufficient for any rational jury to convict defendant of tax evasion.  (Defendant's Issue I.)

III.     Whether the district court plainly erred by failing to sua sponte instruct the jury that a defendant's "good faith" negates the "willfulness" element of tax evasion.

## STATEMENT OF THE CASE

### I. FACTS

Defendant Melissa Rose Barrett, a.k.a Bryan Wayne Barrett,[1] is a medical doctor.  *E.g.*, ROA.2245.  For the 2007 through 2017 tax years, defendant failed to fully pay the substantial income taxes reported on her tax returns.  *E.g.*, ROA.1981-83.  As of April 2018, defendant owed approximately $1.9 million in unpaid taxes, penalties, and interest.  ROA.1985.

In March 2011, the IRS initiated collection proceedings against defendant by filing a federal tax lien in Livingston Parish, Louisiana.  ROA.1617.

---

[1] In 2018, defendant transitioned from male to female and changed names from Bryan to Melissa.  ROA.3403 (PSR ¶4).

In May 2011, defendant began operating Central Stat Care, an urgent care clinic in Baton Rouge.  ROA.1814, 1867, 1870, 2256.  In October 2011, defendant formed Stat Care Clinics, LLC, d/b/a Central Stat Care, a Louisiana limited liability company, to operate the clinic.  ROA.1866-67, 2257-58.

Beginning in March 2012, and continuing through April 2021, defendant made a series of property purchases in Stat Care's name.  *See* ROA.3360-61 (Government Exhibit ("GE") 107, summary of affirmative acts of tax evasion).  The first three of these purchases, made during 2012-2013, were hunting properties in Missouri.  ROA.1617-18, 1621, 1913, 1916, 1994-95.  Stat Care—a medical clinic in Louisiana—had no business use for these hunting properties.  *See* ROA.1749.

In or around 2012, IRS Revenue Officer Kimberly Gelobter was assigned to collect defendant's unpaid taxes, ROA.1234, and during the course of her assignment she filed federal tax liens against defendant, ROA.1254.  On or about November 6, 2012, Gelobter sent defendant a final notice of intent to levy her assets.  ROA.1256, 3210-11 (GE 30).  At that time, defendant owed approximately $630,000 in unpaid taxes, penalties, and interest.  ROA.3211.  On or about November 7, 2012, defendant sent Gelobter an IRS Form 433-A, Collection Information Statement.  ROA.3213-17 (GE 32).  The purpose of a Form 433-A is to give the IRS a complete picture of the taxpayer's assets and ability to pay.  ROA.1263-64.  But the Form 433-A that defendant submitted was incomplete; it omitted the

Missouri properties that defendant (through Stat Care) had purchased earlier in 2012.  ROA.1286, 1339, 3216.  The form also omitted two bank accounts that defendant controlled.  ROA.1281, 1286, 1385, 3215.

In 2013, defendant acquired a safe for her medical clinic and began directing employees to deposit cash receipts in the safe instead of the bank.  ROA.1754, 1880-81.  Later that year, defendant purchased an airplane in Stat Care's name.  ROA.1400-10, 1916, 1995.  But the medical clinic had no business use for an airplane; defendant used it to fly to Missouri to go hunting.  *See* ROA.1410, 1582, 1761.

In February 2015, defendant used Stat Care to buy yet another hunting property in Missouri.  ROA.1622, 1834, 1918, 1996.  But this would be defendant's last purchase of property in Missouri; in June 2015, Gelobter made a final determination that Stat Care Clinics, LLC, was defendant's "alter ego."  ROA.1253, 1331-32.  That determination allowed the IRS to treat Stat Care's assets as defendant's assets for collection purposes, ROA.1319, and in June 2015, the IRS filed its first lien against defendant's Missouri property (nominally owned by Stat Care).  ROA.1622-23.

But even though defendant did not thereafter buy any more property in Missouri, she did not stop purchasing property in Stat Care's name.  Beginning in January 2017, and continuing through 2021, defendant used Stat Care to buy more real estate in Iowa and Kansas.  *E.g.*, ROA.1431-32, 1623-24, 1996 (January 2017 purchase of hunting property in Iowa); ROA.1438-39, 1997 (May 2018 purchase of hunting property in Kansas);

ROA.1440-41, 1997 (August 2020 purchase of hunting property in Iowa).
Also, in June 2017, defendant used Stat Care to buy a boat. ROA.1920,
1997. Like the airplane, the boat was unrelated to Stat Care's medical
business; defendant used it to go fishing. ROA.1434, 2304.

In total, during 2012-2021, defendant spent nearly $20 million on real
estate, the airplane, and the boat.[2] ROA.1632; GE 106. Of that $20 million,
defendant paid more than $4 million in cash, *ibid.*, an amount double the
highest balance of her tax debt, ROA.1985.

The IRS opened a criminal investigation of defendant, *e.g.*, ROA.1353,
and in July 2017, defendant gave a voluntary interview to IRS agents,
ROA.1352-53, 1357-58. Defendant told the agents that she had property in
Missouri (against which the IRS had already filed liens) but failed to tell the
agents that she had property in Iowa (which defendant had purchased in
early 2017). ROA.1359, 1392.

Defendant also admitted to the agents that she titled property in the
name of Stat Care and kept cash revenues in the clinic safe to prevent the
IRS from collecting her taxes:

> The defendant provided information about how…she had to do
> this…because she had…land previously seized by the IRS. She

---

[2] All but two of these 2012-2021 purchases were made in Stat Care's
name. In April 2013, defendant used Barrett Armstrong Properties, LLC, to
purchase the building where her medical clinic was located. *See* Brief for
Appellant ("Br.") at 6, 10. In July 2020, defendant purchased Iowa property
in her own name. ROA.1626. (This purchase was not charged as an
affirmative act of evasion. *See* Br. 10-11.)

was very adamant that her land was being seized, her bank
accounts were being levied, and giving those reasons on why
she had to basically put the name in another LLC.

….

She also told us the reason why she kept money in a safe is
because she had to make payroll – that was one of the reasons –
and that she kept anywhere from sixty-five to eighty-five
thousand when we questioned about the safe.  And she – she
said the reason why is because the IRS had levied her accounts
and she can't have the IRS levying her accounts.

ROA.1359-60 (testimony of IRS agent).

## II. Procedural History

In a September 8, 2022, indictment, a grand jury charged defendant
with willfully attempting to evade payment of income taxes, in violation of
26 U.S.C. § 7201.  ROA.27.  The indictment alleged affirmative acts of
evasion that included the 2012-2021 property purchases discussed above.
ROA.27-28.  Seven of these alleged acts occurred after September 8, 2016—
that is, within the six-year statute of limitations.  ROA.28.

The case went to trial.  In their proposed jury instructions, both
parties requested the Circuit's pattern instruction on the elements of tax
evasion:

*First*: That there exists a substantial tax deficiency owed by the
defendant to the Internal Revenue Service, as charged;

*Second*: That the defendant committed at least one affirmative
act to evade or defeat payment of the income tax[es] owed.  An
affirmative act includes any conduct the likely effect of which
would be to mislead or conceal; and

> *Third*: That the defendant acted willfully; that is, the law imposed a duty on the defendant, the defendant knew of the duty, and the defendant voluntarily and intentionally violated that duty.

Fifth Circuit Pattern Jury Instruction 2.103 (2019), *available* here; *see* ROA.257 (Defendant's Proposed Instructions); ROA.280 (Government's Proposed Instructions).

After the government rested, defendant testified. ROA.2242. She claimed that, when purchasing properties in Stat Care's name, she did not intend to conceal assets from the IRS. ROA.2317, 2322, 2336. Defendant also claimed that she willingly spoke with IRS agents (allegedly to work out a payment plan) and that she reported as income the cash revenues deposited in the clinic safe. *See* ROA.2291-92, 2298-99.

Following defendant's testimony, the government proposed a supplemental jury instruction on the elements of tax evasion:

> It is possible to willfully evade the payment of a tax without making any misrepresentation. The elements of tax evasion do not necessarily involve fraud or deceit.

ROA.368 (citing *Kawashima v. Holder*, 565 U.S. 478 (2012)). At the jury instruction conference, the government argued that the proposed instruction was appropriate given defendant's claims that she cooperated with the IRS and truthfully reported her income and assets. ROA.2467-68. Defendant objected to the proposed instruction. *E.g.*, ROA.2476-77, 2484-85.

The district court gave the pattern instruction on the elements of tax evasion, as the parties requested.  ROA.2535.  The district court also gave the supplemental language requested by the government providing that tax evasion "does not necessarily involve fraud or deceit."  ROA.2536.  But the court added other language—not requested by either party—that effectively increased the government's burden on the affirmative-act element.  In particular, the non-requested verbiage added by the court substituted the pattern instruction's use of "includes" with "requires":

> The second element, an affirmative act to evade or defeat a tax, *requires* the government to prove any conduct, the likely effect of which would be to mislead or conceal.  A possible route of conduct under this statute is evading or defeating the payment of tax.

> Importantly, for this element, the government must prove an affirmative act and cannot rely upon a failure to act or failure to file a tax return, even if that failure was willful.  It is possible to willfully evade the payment of a tax without making any misrepresentation.  An affirmative act of evasion does not necessarily involve fraud or deceit.

ROA.2536 (emphasis added).  *Compare* Fifth Circuit Pattern Jury Instruction 2.103 (2019) ("An affirmative act *includes* any conduct the likely effect of which would be to mislead or conceal." (emphasis added)).

At defendant's request, the district court also instructed the jury that, if it did not find defendant guilty of the charged offense of tax evasion, it should consider the lesser included offense of willfully failing to pay a tax, in violation of 26 U.S.C. § 7203.  ROA.2542-43.  Although it is the

government's position that failure to pay is not a lesser included offense of tax evasion,[3] the government, in an abundance of caution, chose not to argue in the district court that *United States v. Doyle*, 956 F.2d 73, 76 (5th Cir. 1992), in which this Court held that a failure to file, in violation of Section 7203, was a lesser included offense of Section 7201, was overruled by the Supreme Court in *Carter v. United States*, 530 U.S. 255 (2000).  *See* ROA.2488. Ultimately, the district court's lesser-included-offense instruction did not

---

[3] *See* U.S. Dep't of Justice, Tax Division, *Criminal Tax Manual* § 8.11, *available* here.  *Doyle* did not cite the Supreme Court's prior decision in *Schmuck v. United States*, 489 U.S. 705 (1989), which established a "strict elements" test under which "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense."  *Id.* at 716.  Under *Schmuck*, only if the strict elements test is satisfied does a court consider whether the "independent prerequisite" that "the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater" is satisfied.  *Id.* at 716 n.8.  After *Doyle*, the Supreme Court rejected an argument that "*Schmuck*'s elements test is too rigid" and applied a "textual comparison" to determine whether the elements of one statutory offense were necessarily included in another.  *See Carter v. United States*, 530 U.S. 255, 262-63 (2000).

Under the "textual comparison" required by *Carter*, Section 7203 is not a lesser included offense of tax evasion.  Section 7203 requires an element that Section 7201 does not:  that the defendant be "required under this title to pay any estimated tax or tax."  26 U.S.C. § 7203.  Although tax evasion requires that the defendant attempt "to evade or defeat any tax," 26 U.S.C. § 7201, the defendant need not be the one required to pay the tax at issue, *see United States v. Townsend*, 31 F.3d 262, 267 (5th Cir. 1994). *Doyle*, which held that "§ 7203 . . . defines a lesser included offense of § 7201" without considering this textual difference between the statutes, *see* 956 F.2d at 75 (quotations omitted), is therefore inconsistent with *Carter*. As held in *Carter*, even if a jury could factually convict on a misdemeanor offense and not the indicted felony, no lesser-included-offense instruction is appropriate if the elements of the misdemeanor are not a subset of the felony's elements.  *See* 530 U.S. at 262-63.

affect the outcome because the jury convicted defendant of the charged offense of tax evasion.  ROA.419-20 (verdict form).

During trial and after the verdict, defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, mainly arguing that the government failed to prove that she committed a sufficient act of tax evasion within the statute of limitations.  ROA.430, 2037-38, 2452. Defendant argued that, after 2015, her continued use of Stat Care to purchase properties could not constitute tax evasion because, by that time, the IRS already knew that defendant owned Stat Care.  The district court denied defendant's motion, finding her argument "absurd":

> Defendant's twisted logic leads to a tax evasion catch-22:  the Government's discovery of your tax evasion scheme renders it lawful.  The Court will not entertain this absurd interpretation of the nation's tax laws.

ROA.454.  The court sentenced defendant to 52 months of imprisonment. ROA.457.

## SUMMARY OF THE ARGUMENT

I.    The district court properly instructed the jury that a defendant may willfully evade the payment of a tax without making any misrepresentation, and that the elements of tax evasion do not necessarily involve fraud or deceit.  This instruction was a correct statement of law, taken directly from the Supreme Court's description of the elements of tax evasion.  *See Kawashima v. Holder*, 565 U.S. 478, 488 (2012).

Contrary to defendant's claim, the portion of the jury instructions providing that an affirmative act "requires" conduct that could mislead or conceal does not mandate vacatur of defendant's conviction—even if that language is in tension with the supplemental instruction that fraud and deceit are not required for evasion of payment, and the Circuit's pattern instruction that an affirmative act "includes" conduct that could mislead or conceal. The supplemental instruction and the pattern instruction are legally correct. And to the extent that the district court erred by varying from the pattern instruction and instructing that an affirmative act "requires" conduct that could mislead or conceal, that error was harmless to the defense because it imposed a higher burden on the government than legally required.

II.     The evidence was sufficient; a rational jury could conclude that defendant purchased properties in Stat Care's name to evade payment of her taxes. Through these property purchases, defendant diverted millions of dollars away from her tax debt and into properties located in several states. Moreover, defendant's admissions and falsehoods to the IRS showed that she acted willfully, in violation of a known legal duty, to impede the IRS's collection efforts.

III.    The district court did not plainly err by failing to sua sponte instruct the jury that a defendant's "good faith" is a defense to tax evasion. Binding decisions of this Court and the Supreme Court establish that, when the trial court adequately instructs the jury on the "willfulness" element of

tax evasion, a separate good-faith instruction is not necessary. Here, the district court correctly instructed the jury on willfulness. Therefore, the court did not err, much less plainly err, by not giving a separate good-faith instruction.

## ARGUMENT

### I. The Jury Was Properly Instructed that Tax Evasion Can Be Committed Without Making Any Misrepresentation and Does not Require Fraud or Deceit

*A.    Standard of Review*

This Court reviews jury instructions "for abuse of discretion, affording substantial latitude to the district court in describing the law to the jury." *United States v. Mazkouri*, 945 F.3d 293, 302 (5th Cir. 2019). The Court "assess[es] whether the district court's charge was a correct statement of the law applicable to the factual issues confronting the jury." *Ibid.*

Defendant asserts that de novo review applies because she raises an issue of "statutory construction" concerning "an element of the offense." Br. 28. However, defendant does not actually argue that "fraud or deceit" is an element of tax evasion, 26 U.S.C. § 7201. *See* Br. 18-19, 37 n.32. Instead, defendant argues that the district court's "[no] fraud or deceit" instruction, though legally correct, was confusing because it conflicted with other instructions that the court gave. *See ibid.* This argument is not about "statutory construction"; it is about the district court's discretion in choosing instructional language that will assist the jury.

Under any standard of review, defendant's claim fails.  As discussed below, the district court's "[no] fraud or deceit" instruction was a correct statement of law and relevant to the issues confronting the jury.

B.    *The Challenged Instruction Was Legally Correct and Factually Relevant*

The district court properly gave the jury instruction challenged by defendant:

> It is possible to willfully evade the payment of a tax without making any misrepresentation.  An affirmative act of evasion does not necessarily involve fraud or deceit.

ROA.2536.  This instruction is indisputably a correct statement of the law; its language tracks the Supreme Court's explanation of the elements of tax evasion in *Kawashima v. Holder*:  "it is possible to willfully evade or defeat payment of a tax under § 7201 without making any misrepresentation." 565 U.S. 478, 488 (2012).  The Court uses the example of "a taxpayer who files a truthful tax return, but who also takes affirmative steps to evade payment by moving his assets beyond the reach of the Internal Revenue Service."  *Ibid*.  And the Court, while acknowledging that "evasion-of-payment cases will almost invariably involve some affirmative acts of fraud or deceit," held that "it is still true that the elements of tax evasion pursuant to § 7201 do not *necessarily* involve fraud or deceit."  *Ibid.*

*Kawashima*'s description of tax evasion was well-grounded in the text of Section 7201 and Supreme Court precedent.  Section 7201 does not refer to "fraud" or "deceit"; the statute reaches "any" attempt to "evade or

defeat any tax." 26 U.S.C. § 7201. The Supreme Court has long recognized that this language does not require an "intent to defraud." *United States v. Scharton*, 285 U.S. 518, 521 (1932). It is sufficient that the prosecution prove "a willful attempt to evade or defeat." *Ibid.* In *Spies v. United States*, 317 U.S. 492 (1943), the Court emphasized that "Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished"; on the contrary, the attempt may be accomplished "in any manner." *Id.* at 499. Based on this authority, the district court correctly instructed the jury that tax evasion "does not necessarily involve fraud or deceit." *Cf. United States v. Sertich*, 879 F.3d 558, 566-67 (5th Cir. 2018) ("Section 7201 does not require proof that the defendant was uncooperative; it requires only that a defendant willfully try to evade or defeat the payment of a tax through an affirmative act.").

The district court's "[no] fraud or deceit" instruction was also supported by the evidence and relevant to the issues confronting the jury. At trial, defendant claimed that she truthfully answered IRS agents' questions about her assets to resolve her tax debts, *e.g.*, ROA.2291-92, 2298-99, 2317, 2320-22, and that she was not trying to deceive the IRS by purchasing assets through Stat Care after the IRS determined that it was defendant's alter ego, ROA.2597-99. Given these claims, it was important for the jury to understand that, even if defendant never lied or deceived the IRS, she could still be guilty of tax evasion if she committed some other

affirmative act.  The district court's "[no] fraud or deceit" instruction served that purpose.

Defendant acknowledges that she cannot challenge *Kawashima*'s statement of the elements of tax evasion.  *See* Br. 37 n.32.  Instead, defendant argues that the district court's "[no] fraud or deceit" instruction, though legally correct, was confusing because it "conflicted" with another instruction that the court "correctly" gave:

> The second element, an affirmative act to evade or defeat a tax, requires the government to prove any conduct, the likely effect of which would be to mislead or conceal.

Br. 33-34; ROA.2536.

Defendant's argument proceeds from a false premise.  It was not "correct" to instruct the jury that tax evasion "requires" conduct likely to mislead or conceal.  That portion of the jury instructions was erroneous.  (However, that error was harmless to the defense, *see* Argument I.C, *infra*.)  The district court varied from the Circuit's pattern instruction, which states that an affirmative act of evasion "includes" conduct likely to mislead or conceal.  Fifth Circuit Pattern Jury Instruction 2.103 (2019).  The pattern's less restrictive "includes" language is correct, as the Supreme Court has recognized that an act of evasion "may," but need not, include conduct "the likely effect of which would be to mislead or to conceal."  *Spies*, 317 U.S. at 499; *see also United States v. McGill*, 964 F.2d 222, 230 (3d Cir. 1992) ("Generally, affirmative acts associated with evasion of payment involve

some type of concealment…*or* the removal of assets from the reach of the

Internal Revenue Service." (emphasis added)); *United States v. Mal*, 942 F.2d

682, 687 (9th Cir. 1991) (Evasion of payment "generally involves conduct

designed to place assets beyond the government's reach after a tax liability

has been assessed, such as by transferring assets abroad, placing assets in

the names of others, *or* using cash transactions to conceal the existence of

assets." (emphasis added)).

Given that tax evasion does not require conduct likely to mislead or

conceal, defendant's argument about "contradictory" and "inconsistent"

jury instructions (*see* Br. 33-35) lacks a legal foundation.[4]

Nor is this case like the "mandatory presumption" cases cited by

defendant.  Br. 35-36.  In *Sandstrom v. Montana*, 442 U.S. 510, 522-24 (1979),

the Court invalidated a jury instruction that created an impermissible,

---

[4] Given that defendant errs as a matter of law in asserting that tax evasion requires conduct likely to mislead or conceal, her contention that confusion caused by contradictory instructions prejudiced her necessarily fails, but we also note that the district court's instruction that tax evasion "does not necessarily involve fraud or deceit" is not obviously contradictory.  Contrary to defendant's claims (*see* Br. 33-34), "mislead" and "conceal" are broad terms that do not necessarily connote deliberate fraud or deceit.  *See* "Mislead," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/mislead (last visited Aug. 20, 2024) (defining "mislead" as "to lead in a wrong direction or into a mistaken action or belief *often* by deliberate deceit" (emphasis added)); "Conceal," *The American Heritage Dictionary of the English Language*, https://ahdictionary.com/word/search.html?q=conceal (last visited Aug. 20, 2024) (defining "conceal" as merely to "hide" something or to "keep [it] from being discovered").

conclusive presumption on criminal intent.  Likewise, in *United States v. Cessa*, 785 F.3d 165, 185-86 (5th Cir. 2015), this Court invalidated an instruction that effectively mandated the jury to presume that certain conduct established the criminal intent required for money laundering.  In this case, the jury was not instructed to presume anything about defendant's intent.

Finally, there is no basis for defendant's claim that the challenged instruction undermined the jury's finding of willfulness.  Br. 36-37.  The "[no] fraud or deceit" language was limited to the district court's supplemental instruction on "[t]he second element, an affirmative act to evade or defeat a tax."  ROA.2536.  This language was not included in the court's separate instruction on "[t]he third element, willfulness."  *Ibid.*  Moreover, the jury instructions on willfulness were correct.  Consistent with Supreme Court precedent, *see Cheek v. United States*, 498 U.S. 192, 201 (1991), the district court instructed that a defendant acts "willfully" when "the law imposed a duty on the defendant, the defendant knew of the duty, and the defendant voluntarily and intentionally violated that duty."  ROA.2536.

C.   *Any Error Was Harmless*

Jury instructions that misstate the law are subject to harmless-error review.  *United States v. Grant*, 850 F.3d 209, 217 (5th Cir. 2017).  An instructional error is harmless if the reviewing court "is able to conclude

beyond a reasonable doubt that the jury verdict would have been the same absent the error." *Ibid.* (citation omitted).

In determining whether the error affected the verdict, it is important to keep in mind the specific, "identified error" that defendant alleges. *See* Br. 37. Defendant does not claim that Section 7201 requires "fraud or deceit" and that the jury should have been so instructed. Accordingly, on harmless-error review, the question is not whether the government presented overwhelming evidence of fraud or deceit. *Compare, e.g.*, *United States v. Skilling*, 638 F.3d 480, 483-84 (5th Cir. 2011).

Instead, defendant argues that the "[no] fraud or deceit" language in the district court's supplemental instruction was confusing because it conflicted with other language in that same instruction that "require[d]" the government to prove conduct likely "to mislead or conceal." Br. 33-34; *see also* Br. 38 (arguing that the challenged instruction "could have induced the jury to find the affirmative-act element" even if defendant "did not intend to mislead or conceal"). Even if defendant were correct that these instructions were confusing, the confusion was harmless to the defense because it potentially increased, rather than decreased, the government's burden.

As discussed, it was error to instruct the jury, contrary to this Court's pattern instruction, that the affirmative-act element "requires" conduct likely to mislead or conceal. An affirmative act "includes," but does not necessarily require, "any conduct the likely effect of which would be to

mislead or conceal."  Fifth Circuit Pattern Jury Instruction 2.103 (2019);
*accord United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009) ("Affirmative
acts…may include," among other things, "any conduct, the likely effect of
which would be to mislead or to conceal.").  Assuming, then, that
defendant is correct that it was confusing to instruct the jury that tax
evasion (1) requires conduct likely to "mislead or conceal" but (2) does not
require "fraud or deceit," that confusion did not prejudice the defense.  At
worst, these instructions would have left the jury with the misimpression
that the government necessarily had to prove something that it does not—
i.e., "conduct, the likely effect of which would be to mislead or conceal."
ROA.2536.  Despite that potential confusion and increase in the
government's burden, the jury convicted.  It follows that any instructional
error was harmless beyond a reasonable doubt.[5]  "Where a jury returns a
guilty verdict on instructions requiring it to find…*more* than the law
requires, a court can generally conclude that the jury would also have
returned a guilty verdict on proper instructions omitting the unwarranted
element."  *United States v. Ng Lap Seng*, 934 F.3d 110, 139 (2d Cir. 2019)
(citing *Musacchio v. United States*, 577 U.S. 237, 243 (2016)).

---

[5] For this reason, this case is unlike *Nowell v. Universal Electric Co.*, 792
F.2d 1310 (5th Cir. 1986), cited by defendant (Br. 34-35).  *Nowell*, a civil case,
found prejudicial error when the jury was instructed on "diametrically
opposite propositions of law" that, in the absence of a special verdict, made
it impossible to tell whether the jury relied on the correct or the erroneous
instruction in awarding damages to the plaintiff.  *Id.* at 1315-16.

## II. THE EVIDENCE WAS SUFFICIENT

### A.   *Standard of Review*

A preserved challenge to the sufficiency of the evidence is reviewed de novo, but review is "highly deferential to the verdict." *United States v. Bolton*, 908 F.3d 75, 89 (5th Cir. 2018) (quotation omitted). The conviction must be affirmed if, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sertich*, 879 F.3d 558, 565 (5th Cir. 2018) (quotation omitted).

### B.   *Defendant Willfully Committed Several Acts of Evasion*

The elements of tax evasion, 26 U.S.C. § 7201, are "(1) existence of a tax deficiency; (2) an affirmative act constituting an evasion or an attempted evasion of the tax; and (3) willfulness." *Sertich*, 879 F.3d at 565 (quotation omitted).

The first element, the existence of a tax deficiency (i.e., a tax due and owing), is undisputed. During the 2012-2021 period charged in the indictment, defendant owed up to $2 million in unpaid income taxes, penalties, and interest. *E.g.*, ROA.1985, 1988 (testimony of IRS agent).

As to the second element, there is no dispute that defendant committed the acts charged as affirmative acts of evasion, and that seven of those acts occurred within the six-year limitations period. *See* Br. 24 (defendant's reduction of GE 107, chart of affirmative acts). Moreover,

these acts—involving the use of an LLC to divert money away from the IRS and into property purchases—are sufficient acts of evasion.

Section 7201 does not limit the type of conduct that may qualify as an affirmative act; the statute reaches "attempts in any manner" to evade a tax.  26 U.S.C. § 7201; *see also Spies v. United States*, 317 U.S. 492, 498-99 (1943).

Under this standard, a rational jury could find that defendant's property purchases in Stat Care's name were attempts to evade paying her taxes.  Through these purchases, defendant diverted millions of dollars away from her tax debts and into properties located in several states.  For example, to complete the May 2018 purchase of Kansas property charged as an affirmative act (*see* Br. 24), defendant paid $2.6 million.  ROA.2174-75.  At that time, defendant's total, outstanding tax liability was just under $2 million.  ROA.2175.  Defendant was aware of that tax liability, as she was in frequent communication with the IRS.  *See, e.g.*, ROA.2320 (defendant's testimony that she was "happy to talk to" IRS agents about her tax debt); *United States v. Yurek*, 925 F.3d 423, 432 (10th Cir. 2019) (affirmative act proved through defendant's use of an LLC to pay personal expenses while she was trying to settle with the IRS).  In addition, several witnesses testified that the properties that defendant purchased were unrelated to Stat Care's business.  *See* ROA.1749, 1763 (defendant's office manager); ROA.1775 (defendant's real estate agent); ROA.1866-67, 1920

(defendant's ex-wife).  This evidence supported a finding that defendant's property purchases were affirmative acts of tax evasion.

Finally, there was strong evidence of "willfulness," which requires "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that [s]he voluntarily and intentionally violated that duty." *Sertich*, 879 F.3d at 565 (quoting *Cheek v. United States*, 498 U.S. 192, 201 (1991)).  There is no dispute that defendant knew that she had outstanding tax liabilities that she was legally required to pay.  For example, defendant's own testimony established that she "had repeated interactions with the IRS as to [her] taxes due and owing."  *Sertich*, 879 F.3d at 566.  *See, e.g.*, ROA.2292-94, 2319-20.

Perhaps the most damning evidence was defendant's admission, during an interview with IRS agents, that she deliberately avoided payment and collections by titling properties in the name of "another LLC [i.e., Stat Care]" and keeping cash revenues in a safe.[6]  ROA.1359-60.  This admission was powerful, direct evidence of defendant's willful attempts to evade payment.  *Cf. Bolton*, 908 F.3d at 89 (Evidence of willfulness "is

_____

[6] Even without her admission, defendant's use of the safe to stockpile thousands of dollars in cash revenues was strong evidence of tax evasion. *See Sertich*, 879 F.3d at 567 ("The evidence also showed that Sertich used cashier's checks at times to pay his staff instead of using checks from a business account; this allowed him to avoid having money in a bank account that the IRS could access.").

ordinarily circumstantial, since direct proof is often unavailable."
(quotation omitted)).

Of course, at trial defendant tried to downplay her admission to the
IRS agents, claiming that it was an "off-the-cuff," "not exactly true"
"statement of frustration." ROA.2322. But the jury, as the final arbiter of
defendant's credibility, was free to reject defendant's courtroom spin on
her own prior statements. *See Bolton*, 908 F.3d at 89 ("It is the province of
the jury to weigh any conflicting evidence and to evaluate the credibility of
witnesses." (cleaned up)).

There was additional, circumstantial evidence of willfulness on
which the jury could rely. As defendant notes, "[e]vidence of affirmative
acts may be used to show willfulness." Br. 23 (quoting *United States v.
Romano*, 938 F.2d 1569, 1572 (2d Cir. 1991)). And as discussed, defendant's
affirmative acts included repeatedly pumping millions of dollars into new
real-estate purchases rather than using those funds to pay her delinquent
taxes.

Defendant's falsehoods and omissions also demonstrated willfulness.
The Form 433-A that defendant submitted in 2012 omitted Missouri
properties that defendant had recently purchased and two bank accounts
that defendant controlled. ROA.1281, 1385, 3216. During her 2017
interview with IRS agents, defendant admitted that she had property in
Missouri (which she had purchased years before) but failed to disclose that
she had property in Iowa (which she had purchased earlier that year).

ROA.1392, 2377-78.  From this evidence, the jury could conclude that defendant willfully attempted to evade payment of taxes.

C.    *Defendant's Tax Evasion Did Not Stop When the IRS Discovered Stat Care*

Defendant's sufficiency challenge relies on the fact that, no later than 2015, the IRS determined that Stat Care was defendant's "alter ego."  From that fact, defendant argues—as she did below—that no rational jury could find that defendant's later uses of Stat Care to purchase properties were affirmative acts of evasion.  Br. 25.

The evidence, however, amply supported the jury's contrary finding, as the district court correctly found.  ROA.450-55.  In addition to the evidence discussed above showing that defendant used Stat Care as part of her ongoing scheme to evade payment of her taxes, other evidence confirmed that she did not cease doing so when the IRS made an alter-ego determination.  After alter-ego liens were filed against property in Louisiana and Missouri that defendant had purchased through Stat Care, defendant purchased property in different states—Iowa and Kansas— where the IRS had not filed alter-ego liens.  ROA.1622-24.  This had the effect of slowing down any IRS seizure of the property because, as Revenue Officer Gelobter explained to the jury, the IRS would first need to locate this property, and then initiate the time-consuming process of issuing a nominee lien against the property and forcing a judicial sale.  ROA.1250-51, 1292-95, 1333.

Defendant, moreover, took additional steps to prevent the IRS from seizing and selling this property to satisfy her tax debts. In 2018, she sold the Iowa property she purchased in 2017, and, just a few days later, used the proceeds to buy new property in Kansas through Stat Care. ROA.1624-25, 1637-38, 1644-45. Defendant also purchased this Kansas property in an "owner financed" transaction in which the title remained in the name of the seller, making it even harder for the IRS to track the property down. ROA.1646, 1648, 1843.

And when IRS Special Agents interviewed defendant in July 2017, she admitted purchasing property in Missouri through Stat Care, but she did not mention the more recently purchased Iowa property. ROA.1392, 2377-78. During her trial testimony, defendant tried to excuse that non-disclosure as "inadvertent," ROA.2379, but the jury was free to reject that excuse as incredible and find that defendant was continuing her scheme to evade the payment of her taxes when she purchased property through Stat Care in Iowa and Kansas.

The jury could likewise rationally conclude that defendant's purchase of a boat in June 2017 in Stat Care's name was another attempt to evade payment of her taxes. Defendant told the IRS Special Agents during the July 2017 interview that she bought the boat for business reasons, ROA.2376-77, but that, the evidence showed, was a lie: defendant used the boat for fishing, ROA.1434, 2304. At trial, confronted with evidence exposing her earlier lie, defendant changed her story, testifying that she

purchased the boat through Stat Care not to evade taxes but to avoid questions related to her transition from male to female.  ROA.2303-04.  The jury was well within its rights to reject this after-the-fact explanation and conclude that the boat purchase was an affirmative act of evasion.

Further, to the extent defendant is arguing that her criminal tax evasion—involving the use of Stat Care to purchase properties—somehow ceased to be criminal because the IRS caught on, her argument is, as the district court observed, "absurd."  ROA.454.  Tax evasion requires only a "willful attempt" to evade, and the sufficiency of the evidence does not turn on the "eventual success, if any, in the evasion of the payment of taxes."  *United States v. Norris*, 205 F.2d 828, 829 (2d Cir. 1953).  "[I]t is the willful and positive attempt to evade tax in any manner or to defeat it by any means which constitutes the offense, rather than the success or consummation of the scheme."  *United States v. Huebner*, 48 F.3d 376, 379-80 (9th Cir. 1994) (cleaned up).

Nor is defendant correct in premising her sufficiency challenge on the assumption that any act of evasion must be committed with an intent to conceal.  *See* Br. 26 ("No rational taxpayer could think that she was concealing assets by listing them under the [alter-ego LLC].")  As discussed, the mens rea for tax evasion is willfulness, and the affirmative-act element does not add the requirement of an intent to conceal or otherwise change the required state of mind.  Indeed, as demonstrated above (Argument I.B), tax evasion does not even require conduct that is

likely to conceal.[7]  And even if it did, defendant's sufficiency challenge would still fail, given the evidence, discussed above, that defendant tried to mislead the IRS and conceal her assets even after the IRS found out about Stat Care by buying and selling properties in new states and omitting mention of those properties when she was interviewed by the IRS.

Finally, defendant's insistence that she made these purchases for the legitimate purpose of improving farming[8] and hunting properties (*see* Br. 16, 27) is unavailing.  "If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes."  *Spies*, 317 U.S. at 499.  Because the evidence was sufficient for the jury to find that defendant acted at least in part to evade taxes, it makes no difference whether defendant also acted as a "farming entrepreneur."  *See* Br. 3.

---

[7] As discussed, a portion of the jury instructions erroneously stated that an affirmative act "requires" conduct likely "to mislead or conceal." But that error cannot help defendant's challenge to the sufficiency of the evidence.  The Supreme Court has held that "a sufficiency challenge should be assessed against the [actual] elements of the charged crime," not against a jury instruction that erroneously "adds an element to the charged crime." *Musacchio v. United States*, 577 U.S. 237, 243 (2016).

[8] Defendant testified that several of the properties she purchased were not just for hunting but also for farming development.  *E.g.*, ROA.2267-68.  Defendant's claims about the farming potential of these properties are dubious; other witnesses testified that these properties were used for hunting.  ROA.1396 (IRS Special Agent Lori Marable); ROA.1913, 1916 (defendant's ex-wife, Rachel Grigg).  Regardless of whether these properties had greater potential value for hunting, farming, or another purpose, the jury could find that one of defendant's purposes in purchasing the properties was to evade taxes.

### III. The District Court Did Not Plainly Err by Failing to Give a Separate Good-Faith Instruction

*A.    Standard of Review*

As defendant acknowledges (Br. 40), she did not ask the district court to give a separate good-faith jury instruction. As a result, review is for plain error. To prevail, defendant must demonstrate (1) an error; (2) that was plain, which means "clear or obvious"; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Stockman*, 947 F.3d 253, 259 (5th Cir. 2020). Because there was no error, defendant cannot prevail.

*B.    A Separate Good-Faith Instruction Was Not Necessary*

Binding precedent establishes that the district court, having correctly instructed the jury on the mens rea of willfulness, was not also required to instruct the jury on good faith.

In *United States v. Pomponio*, the Supreme Court held that the trial court "adequately instructed the jury on willfulness" by explaining that a willful act is one done "with the specific intent to do something which the law forbids." 429 U.S. 10, 11, 13 (1976). Because the trial court's instructions on willfulness were adequate, "[a]n additional instruction on good faith was unnecessary." *Id.* at 13. As the Court further explained in *Cheek v. United States*, the government's burden of proving "willfulness" requires negating a defendant's claim that "he had a good-faith belief that he was not violating any of the provisions of the tax laws." 498 U.S. at 202.

That is, "willfulness" is the absence of "a good-faith misunderstanding" of the law, whether or not that misunderstanding is "objectively reasonable." *See ibid.*

From *Pomponio* and *Cheek*, it follows that a correct definition of willfulness implicitly includes a lack of good faith, making a separate good-faith instruction unnecessary. This Court recognized as much in *United States v. Simkanin*, 420 F.3d 397 (5th Cir. 2005), holding that the district court "was not required to include a specific instruction on good-faith because it adequately instructed the jury on the meaning of willfulness." *Id.* at 411 (citing *Cheek* and *Pomponio*).

In this case, the district court adequately instructed the jury on the willfulness element of tax evasion, and defendant does not argue otherwise. *See, e.g.*, Br. 43. Therefore, the district court's failure to sua sponte give a separate good-faith instruction was not erroneous, let alone plainly so, under *Pomponio* and *Simkanin*. *See Stockman*, 947 F.3d at 262 (failure to give a separate good-faith instruction "was not erroneous, whether reviewed *de novo* or for plain error").

Defendant cites (Br. 42) *United States v. Montgomery*, 747 F.3d 303 (5th Cir. 2014), and *United States v. Carter*, 638 F. App'x 268 (5th Cir. 2015), in which this Court found error (albeit non-reversible error) in the failure to give a requested good-faith instruction, even though the jury was correctly instructed on willfulness. *See Montgomery*, 747 F.3d at 309; *Carter*, 638 F. App'x at 275.

To the extent that *Montgomery* and *Carter* conflict with the prior, binding decisions of *Pomponio* and *Simkanin*, *Montgomery* and *Carter* should be disregarded.  *See, e.g.*, *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998) ("one panel of this court cannot disregard, much less overrule, the decision of a prior panel").  In any event, *Montgomery* and *Carter* are distinguishable.  In *Montgomery*, the district court gave a good-faith instruction that was legally erroneous, and in *Carter*, the result was influenced by a government concession (that is, as explained, contrary to *Pomponio* and *Simkanin*).

In *Montgomery*, the defense (and the government) requested a special instruction that the defendants could act in good faith even if their beliefs about the tax law were "unreasonable or irrational."  747 F.3d at 309.  The evidentiary basis for that instruction was one defendant's testimony that he believed that certain income was not taxable.  *Id.* at 307.  The district court gave a modified good-faith instruction that omitted the "unreasonable or irrational" language requested by the parties.  *Id.* at 307-08.  This Court concluded that the district court's omission was error because it "risked implying—in direct conflict with *Cheek*—that the Montgomerys could not be acquitted on the basis of good faith unless their views were objectively reasonable."  *Id.* at 310.

In *Carter*, the government conceded that the district court erred by "failing to include in its willfulness instruction to the jury 'that a good faith belief may be objectively unreasonable if sincerely held.'"  638 F. App'x at 275.  In that case, the defendant testified about his purported ignorance of

rules governing the deductibility of donations of art. *Id.* at 273-74. In light of the government's concession, this Court reviewed the jury instructions for harmless error. *Id.* at 275.

In sum, under *Pomponio* and *Simkanin*, there would be no error even if defendant had actually requested a separate good-faith instruction and the district court had denied that request. And although a district court certainly has the discretion to give a good-faith instruction even if not legally required, defendant did not request one and, notably, there was no factual basis to give one. Defendant did not, for example, claim that she sincerely believed that she did not have to pay taxes or that she could legally avoid payment by concealing assets from the IRS. Defendant simply denied trying to conceal assets. *See*, *e.g.*, ROA.2336 (defendant's denials that she purchased properties "to conceal anything from the IRS" or to keep those properties outside the IRS's reach). There was no error, much less any obvious error. And to complete the argument, we note that, for similar reasons, defendant also cannot satisfy the other requirements of plain-error review—that any error affected her substantial rights and affected the integrity of judicial proceedings.

CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Gregory S. Knapp

S. ROBERT LYONS
  *Chief, Criminal Appeals &*
  *Tax Enforcement Policy Section*
KATIE BAGLEY
JOSEPH B. SYVERSON
GREGORY S. KNAPP
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 972*
  *Washington, D.C. 20044*
  *(202) 307-3350*

*Of Counsel:*
RONALD C. GATHE, JR.
  *United States Attorney*

DATED:  September 18, 2024

CERTIFICATE OF SERVICE

I certify that on September 18, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all registered CM/ECF participants.

/s/ Gregory S. Knapp

GREGORY S. KNAPP
   *Attorney*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,602 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a 14-point, proportionally spaced typeface (Book Antiqua) using Word for Microsoft 365.

/s/ Gregory S. Knapp
GREGORY S. KNAPP
*Attorney*

DATED:  September 18, 2024